Can you speak a little louder? Yes ma'am. Is that better? You might be able to raise the mic. That would help you. Is that better? Yes it is. If you just keep your voice up it will be perfect. Thank you and may it please the court. I have requested the court's permission to reserve five minutes of rebuttal time from my argument this morning. During my oral argument I plan to address the claims regarding insufficiency of the evidence and in particular the two claims upon which the district court granted the writ on. Those were two counts of sexual abuse. Under Jackson the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. And the state gets to define those elements. So the question becomes how did Kentucky define forcible compulsion? Kentucky defined forcible compulsion as physical force which overcomes earnest resistance or a threat of physical force which creates fear of death or injury which overcomes earnest resistance and that threat of physical force can also be an implicit threat. It doesn't have to be a stated threat. In addition, Kentucky has said... Ms. Iger, the district court's judgment that left two counts by the wayside, it matters to, I'm just wondering if it matters much to the sentence or why the warden is so concerned about that. Is it the precedent? Well it doesn't necessarily matter to the sentence. I suppose it depends on how the federal court wants to handle the sentencing. But the state's position would be, and I believe we briefed the habeas remedy for the court, the state's position would be that subtracting those two counts of sexual abuse would not change the number of years of the sentence. That's absolutely correct. That's correct. So it's the precedent. It's the testing of why this wasn't viewed as sufficiently compelled. It is, Your Honor. It would go back to the state trial judge who would make a decision whether he wants to change the sentence or she wants to, right? Well, if the habeas has been granted, is that what you mean? Just on the two? Just on the two. I think that the federal court would order the state court to expunge those two counts is what would happen. And then yes, the state court could decide the sentence. Can you give us the Kentucky cases that deal with surprise as a constituting force? I didn't see any Kentucky cases that specifically dealt with this situation. Counsel for Price cited a Washington case that had to do with surprise. But the facts were a little bit different there. In that case, the fellow grabbed a counselor's breast and she didn't do anything. He took his hand away of his own volition. And in that case, the case, that's not what we had. In this case, the victim did jerk away from him. And the argument, of course, under Jackson, the jury can infer facts to support, they can infer all reasonable inferences, excuse me, from the evidence to support the finding of the elements. And is there anything, do we know anything about the timing of these two offenses? In other words, were they before or after other offenses? These were the very first two offenses. So we can't even say that he knew that she was going to resist and therefore he got there first? Well, she was a 14-year-old child. He was a grown married man, twice her and so I think it would have been reasonable for him to assume that she wouldn't have been excited about that. In fact, she testified at some point during her testimony that she didn't even know what the objective was of certain sexual contact and all of that. I looked at the statute and it seems to me there were any number of alternative ways to prove first degree sexual conduct in that situation. But it may be that this was an old, that back at the time the statute didn't look like that. But you chose the force. You didn't choose a child under 16, right? That's exactly right, Your Honor. And I don't know why the prosecutor chose to instruct the jury as the jury was instructed. I can't answer that. But yes, there were other ways that the jury could have been instructed. Okay, and then when, so you're telling me there really aren't any cases that deal, that have language that could be applied to this? I don't think there's a specific case that I've seen that deals with a surprise attack, but I don't think we need that based upon how the statute's written and how Kentucky defined forcible compulsion at the time. For instance, it's doesn't have to be able to make good on the threats. She doesn't have to struggle if struggle would be dangerous or futile. And in this situation, she didn't have time to struggle because he grabbed her. And so I think there are a couple of arguments that can support the conviction on that. One is he preempted her earnest resistance and Price conceded on page 26 of his second brief that earnest resistance can be preempted. And another way to support the evidence is he grabbed her breast and she jerked away from him. But there is a moment when he's hanging on to her breast and she's pulling away that he is overcoming her earnest resistance. There is a moment where he's still got her and she's jerking away. And there's no time limit on how long the sexual contact has to last. And in addition, another way forcible compulsion can be proven is if a threat of force overcomes, well, creates fear, which then overcomes her earnest resistance. And the victim testified she was on the stand for eight or nine hours and she was very detailed about her fear of the defendant. And she feared him both physically as a person. He had a very explosive temper. He'd cracked her windshield before. He punched a hole in the wall. She was aware that he had choked a fellow in the church and members of the congregation had to pull him off of the church. He spoke on the pulpit about his anger and about his temper and his inability to control it. So she was afraid of him from that standpoint, but she was also afraid of him because they were taught that he was anointed. He was the chosen one. He was the man of God and that people that rebelled against the church would die or would not live very long or something tragic would happen to them. And she had parents that tragic things had happened. So she believed that something could happen. So she feared him both physically and spiritually. And she testified that she absolutely felt like if she resisted, this is on page 1535 of her testimony, if she resisted she felt it would result in death or injury or disease. So that's one way to prove forcible compulsion without worrying about whether the grab and the resistance were simultaneous or not. We definitely had forcible compulsion if you look at her fear. And that was pervasive really on every single count in this case. The only thing that made these two counts a little bit different from the other counts was the fact that there was that simultaneous grabbing and pulling away. Does that answer the question? Would the court like for me to discuss the other counts that sufficiency was held to be? I think most of your argument really addressed that. All the reasons why it was enough. Okay. All right. I think it suffices. Thank you, counsel. I just have one question. Would it be possible for me to reserve the remainder of my time for rebuttal? Yes, you may. Thank you very much. Good morning, your honors. May it please the court. I would like to reserve five minutes of rebuttal time. You may. Thank you very much. Forcible rape and other forcible sexual offenses are crimes of violence. They're not crimes of psychological manipulation. And Kentucky law reflects this. The definition of forcible compulsion requires force that overcomes earnest resistance, that is a fight in which the defendant prevails, or it requires a threat that overcomes earnest resistance by placing a person in immediate death or physical injury to himself or another person or in fear that he or another person will be immediately kidnapped. And I'm reading the statutory language because I think Ms. Lentz perhaps inadvertently misread it because she did not include the immediately part of that. The Kentucky Supreme Court affirmed the conviction over a sufficiency challenge, but it did so not based on force or threats, but because FP, the complainant, had become Price's disciple and was larger than life to her in a religious sense. And in the court's words, it's not inconceivable that in her naivete, her religious naivete, she believed that deviating from his wishes would have invited tragedy to visit herself and other members of her household. The question then is whether complainant's naive religious-based fears that she or members of her family might suffer some sort of extra-worldly supernatural consequences down the road is constitutionally sufficient to establish forcible compulsion under Kentucky's own statute. To put it in terms of the ADPA, the question is whether the state court's conclusion that the evidence was sufficient constitutes an unreasonable application of Jackson v. Virginia. And Judge Cooke, you wrote in Parker v. Renico that the standard is stringent, but it's not and Jackson v. Virginia is a case where the Supreme Court itself said some evidence is not enough. It has to be evidence sufficient to prove beyond a reasonable doubt the elements of the statute. And yes, Kentucky gets to define what the elements of the statute are, element A, B, and C, but once it does so, the court gets to decide what evidence is sufficient to prove that element of the crime. I'm not going to defend all of Price's conduct. It was inappropriate on a number of levels, but engaging in bad behavior or taking advantage of an imbalance in age or experience doesn't amount to sex crimes by forcible compulsion. Sex crimes by forcible compulsion. Forcible rape is a very serious crime, not only because it's a violation of a woman, but because of the violence or the threat of violence that accompanies it. So we can abhor what John Price did, but his 69-year sentence cannot stand. Jackson v. Virginia said it too. That constitutional right is not confined to those who are morally blameless. Even a thief is These offenses occurred over a period of many years, and they began with these breast-touching incidents which Ms. Lenz just spoke about. The state has taken the position at various times that you don't get a free grab, and this is forcible compulsion because otherwise everybody gets a free grab, but that's just not true under Kentucky law. Unconsented to crime under Kentucky law was then, it is now. A 14-year-old can't consent, so if you touch the breast of a 14-year-old, you have committed a misdemeanor. This is a relationship that lasted over many years. John Price was convicted of two rape counts that account for 40 years of his sentence, and I would like to address those now because they are so significant to him. FP and Price started having sexual intercourse when she was 18, almost 19. She had completed community college. She was going to USI, which I think is University of Southern Indiana or Southern Illinois. I'm not sure which. The first time is described in her testimony. She is working with him. She is almost 19 years old. She goes into his office. She knows it's for a sexual purpose. By then, they have developed some kind of a code. She testifies that she is lying on the floor, a red shag rug. She doesn't testify about how she got there. She doesn't testify he pushed her down or tripped her or anything. Apparently, she lay down. Then she describes a quick and hurried sex act, one that she doesn't seem to have been a very eager participant in it, a very enthusiastic participant in it, but there was not evidence that she struggled against him and lost that struggle or that she was placed in fear by his threats. Now, yes, fear can be subjective. It's the victim's, the complainant's fear which matters, but the fear that she entertains has to be caused by the defendant's threats. The threats have to be of a particular nature. They have to be threats of immediate physical harm, immediate death, or immediate kidnapping. Now, she had lots of fears, but they didn't arise from his threats. They arose from her world view. She was afraid of humiliation. Yeah, there was testimony that Price had anger, but when she talked about his anger, she said when he got angry at people, he humiliated them. Humiliation is not death, physical injury, or kidnapping. She was afraid the earth might open up. She was afraid that she could get cancer. She was afraid someone would be in an automobile accident. She had a bunch of fears, but they were not fears that arose from threats of violence that he made against her, and that's what the statute requires. The second rape count involved an incident that happened when she was 22 years old. She is still working for him. Now, remember, they start having a sexual intercourse kind of thing. The rape count is when she's 22. She continues to have sex with him. They travel. They take a trip to, I think it's London, Amsterdam, and Africa, and the last time they have sex is in Africa. They come back. She continues to work for him for some years. People ask her, you know, they notice that there's a relationship going on. They ask her about it, and she denies that anything is going on. John Price's wife asked her about it. She denies that there's anything inappropriate going on. The Kentucky Supreme Court affirmed this conviction, not because it found evidence of force that overcame her resistance, that he won this physical struggle, not because she had fears that arose from his threats, but because of this religious indoctrination, because John Price took advantage of her naivete, that's not the crime of forcible rape. I'm sorry, but something must have distinguished these two occasions from all the sex they were having while they were traveling. You know, well, first of all, they couldn't be charged with sex that occurred outside of Kentucky, so those weren't crimes, but this indictment did list, I believe, originally nine counts of forcible rape because she said they had sex a lot. I think it was, I don't exactly remember how many times, but I think there were nine rape counts. All of them, all of the, except for these two, they were thrown out before the case went to the jury, either before trial or because there was not sufficient evidence to establish the crime. The trial judge did find that these two rapes were distinguishable for some reason, but frankly I think they're the same as the others. There was not evidence sufficient to establish forcible compulsion. Under Kentucky's very specific statute. Let me ask you this, those nine counts that were originally in the indictment, would that have constituted what you're referring to as sexual intercourse and does it represent their entire history of sexual relations?  Other than out of Kentucky? No, no, because F.P. testified that there were many, many, many occasions on which they had sex. I'm not sure she said many, many, many, but she couldn't pin down when or where, so they did not become the subject of a rape charge. And presumably those were some kind of consensual contact? Well, John Price's position was that it was consensual contact, but even if she did not really in her heart of hearts consent, if she went along with it for some reason that we don't know about, it's not forcible compulsion. It may be non-consensual sexual intercourse under the statute, but that's a lesser crime. I'd like, I see my red lights on, but I would like to spend a couple of minutes on the ineffective assistance claim, if you will allow me. Yes, you may. Oh, your time's expired. It has. You don't have any left. I'm sorry. Thank you very much. Do you have a question? No, is she coming back with rebuttal? No, this is her only.  Oh, then no, you will please use it at rebuttal. May I? Thank you. I'd just like to clear up a few things that Ms. Iger said. First of all, Ms. Iger said he's facing a 69-year sentence. He is not facing a 69-year sentence. One count of his sodomy got thrown out on collateral attack. He's facing a 49-year sentence. And Judge Daughtry, to answer your question about whether any of the counts were consensual, any of the rapes were consensual, the answer is absolutely not. No, I wasn't talking about, you know, the statement was they had a long sexual relationship. I'm trying to figure out if the nine counts in the indictment represents all the sex they had in the state of Kentucky, or whether in addition to what the state says are forcible acts, there were other acts that weren't forcible, that aren't contained in the indictment. I see your question. Just as context. Right. She testified, as Ms. Iger stated, she was correct, that they had sex a number of times, many times. I don't know how many times. But none of them were consensual. Okay. So your position is all the sex they had was... Paralyzed. She didn't think that she could basically get out from under him physically. Did anybody ask her why she didn't just walk off? Yes. She was asked that at trial. And she said that she testified that she was brought up in this church. She didn't want to hurt the man of God. She was taught by Price that they had to serve him. And she considered that part of her serving. And in addition, he had talked to God about it, and he had received grace from God for having sex with her. But counsel's overarching point is that this does not match the Kentucky law. That it's the psychological manipulation doesn't work. It needs to be physical force and threat of physical harm. I see. Well, we did have more than just psychological manipulation. We did have force, and we did have threat of physical harm. She, as I explained earlier in my opening argument, she was absolutely terrified of him because of his explosive temper, because of what she had seen him do, and so on and so forth. Those are the arguments you have in your brief, but it doesn't sound... Lots of this... Your argument focuses on the psychological view that the world was going to come to a screeching halt if she didn't follow her religious view to do the bidding of this pastor. Yes, ma'am. That was part of it, but... But that doesn't seem to jive with the physical force requirement of Kentucky law. Well, on many of the counts, there was physical force involved. For instance, I think it was... There were some. I remember reading... Right. He would grab her by the arm, and in fact, she testified that he most always had a hold of her arm when he was molesting her, but he would grab her, I think, on count three, grabbed her by the arm with one hand, pushed her down by her shoulder on the other hand, and then touched her vagina, and she said that he wasn't able to grab her as hard that time because she was so resistant in pulling back from her, and the district court found that even though she was resistant, she was unsuccessful because he was able to touch her vagina. Specifically, that's one example. Specifically, Ms. Iger said she wanted to address the last two counts of rape because those comprised the biggest chunk of his sentence. I'd first like to state that on the last count of the rape, count 10, and indictment 006R-068, that was after 1988, and what happened in 1988 was the forcible compulsion statute was to be overcome on that last count of rape. But you still needed forcible compulsion. Still needed forcible compulsion, and in that case, he was holding a pair of scissors to her crotch. He's what? He was holding a pair of scissors to her crotch. He moved her legs open, cut her pantyhose, and when she instinctively went to close her legs, he said, be careful, you might get cut, and she testified she was afraid and she thought that was a real possibility since he had scissors at her crotch. Okay, and what about the other count of forcible rape? The other count of forcible rape was on a red shag carpet in an adjoining office to his office, and she testified that she went in there and there was, Ms. Iger said there was not forcible. Can you stay by the microphone, please? I'm sorry. I keep weaving. Ms. Iger said there was no force used in that, but that's not right. When you look at her testimony, she says he had her hand on her upper body or her shoulder directing her to lay back, taking her clothes off. The district court found, and she also testified that while he had his hand on her shoulder and was directing her to lay back, she was crying, struggling to sit up, she went into asthma distress, she was struggling to breathe, and he went on with the rape. So there was forcible compulsion in that case. And would the court like for me to briefly address, I know that Ms. Iger, it sounds like she's going to address the ineffective assistance of counsel claims. Would the court like for me to briefly address those? Your choice, counsel. Okay, but the court is going to allow her to address them on rebuttal? I'm not sure why she gets rebuttal. Because it's a clause. You reserved it, but typically you don't get a second chance. There is a cross appeal, but I'm not sure what it is. Why don't you go ahead and we'll allow her to address that because she has a cross appeal. Okay, thank you, Your Honor. Just briefly, the thrust of Price's claims on ineffective assistance of counsel was that his trial counsel failed to ask for a more lenient sentence, both in the penalty phase and at the sentencing hearing. There was a collateral attack hearing where evidence was taken where trial counsel was allowed to explain his trial strategy. During the penalty phase, he testified that he chose not to put mitigating evidence in because he was aware of the fact that the Commonwealth had witnesses ready to testify to some bad character evidence regarding John Price, that he had had sex with two other married women in the church and another underage girl in the church. So that's why he didn't put mitigation evidence on in the penalty phase. He did, however, before the sentencing hearing, send a number of letters to the judge talking about the good works that Price had done. And he conceded at the 1142 hearing that he chose not to send those letters to the prosecutor because he didn't want the prosecutor to have a chance to rebut those letters. This is all in your brief? Yes. Yes, counsel. So for that reason, I'm going to ask that you end your argument here. Thank you, Your Honor. Thank you. Thank you, Your Honors. Two minutes is all on this cross appeal. You reserved four. Okay, but you should have argued that in your first go around. But I'm still arguing its rebuttal on the cross appeal, on which I understood that I had reserved four minutes. I will obviously comply with that for whatever you want. I obviously did not pay attention to that, so take your four minutes, please. Thank you, Your Honor, and I will try to. Ms. Lentz has brought up the God issue again, and I want to suggest that this case cannot be understood without the religious beliefs, religious indoctrination, man of God, prophet of God evidence on which the state continues to rely. And I had asked that I think that this case can be decided on the sufficiency grounds I have raised, but I have asked this panel to consider expanding the certificate of appealability to include issues which specifically raise First Amendment due process fair warning claims, which I do not believe were procedurally defaulted. But I don't believe you have to do that. As a sufficiency case, this case is the rare one. In terms of the scissors, I want to point out that this was a case where she's 22. They go into his office. She leans against his desk. He cuts her pantyhose with scissors. She testified that they had sex that way many times against the desk. She testified that he used his scissors many times. And it's in the appendix. It's document 67-1 at page 144. I'm sorry, I misspoke. 1441 and 1444. And I would request that you look at that. The sentencing claim, if I may speak to it briefly, there are two sentencing claims. At the penalty phase, the defense counsel made, all he did was make an argument to the jury, and it sounded like a prosecutor's argument. Think about how serious the crimes are. Think about the time he'll be out of prison. The jury came back very quickly with a 69-year sentence. Ms. Lenz is right, 20 years of it have been taken off. It's a 49-year sentence. It doesn't make a huge amount of difference, that 20 years off between 49 and 69 years. There's another ineffective assistance claim because in Kentucky, the jury gets to recommend a sentence, but the judge gets to impose it, and the judge has power not to impose the recommended sentence if he believes it is unduly harsh. Defendant's counsel did not ask the judge to reduce it, did not suggest that it was unduly harsh, did not suggest that there was anything wrong with imposing, at that time, a 69-year sentence on this man. That is way out of whack in Kentucky and elsewhere, even for crimes of forcible rape, even against young people, and this was not that ordinary case. You know, forcible compulsion is really important in the case because there is no mens rea requirement in the statute. The mens rea is established by the force or the threats, and so this case was different. This case was a relationship that occurred over many, many years' time, an improper relationship, but not a case of forcible rape, and not one that merits a sentence of 49 years, and that sentence would not have been imposed, I believe. There's a reasonable probability it would not have been imposed if John Price's counsel had acted as counsel when the time came for the penalty phase and the sentencing. The fact that he was extremely discouraged because the jury had convicted doesn't give a lawyer the right to just give up on a client. That's Strickland, and that's the law, and I know, like the sufficiency claim, there's a stringent requirement, but it's not insurmountable, and thank you very much. I hope I have convinced you that this is a rare case. Thank you. Ms. Lentz, you've done a very good job. Thank you, both of you. You've done a good job for your clients. We appreciate your arguments. We will consider your case carefully. Thank you. You may adjourn the court.